IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MATTHEW BECHTER, et al.,

    Plaintiffs, for themselves
and all others similarly
situated,

v.

ORION UTILITIES, LLC, et al.,

    Defendants.

Case No. 3:16-cv-252

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING DEFENDANT DPL, INC.'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
(DOC. #16); DEFENDANTS DPL, ORION UTILITIES, LLC AND EVAN
HAGBERG ARE DIRECTED TO FILE ANY MEMORANDA IN
OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS
CERTIFICATION, EXPEDITED DISCOVERY AND COURT-
SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS (DOC. #2)
WITHIN TWENTY-ONE (21) DAYS OF THIS ENTRY

---

Plaintiffs Matthew Bechter ("Bechter"), Carl Elliott, Jr., Bradley Kurdziel, Josh Moore and Ryan Steele, for themselves and all others similarly situated (collectively "Plaintiffs[1]"), were hired by Defendant Orion Utilities, LLC ("Orion") and, pursuant to Orion's contract with Defendant DPL, Inc. ("DPL"), performed services for DPL. Plaintiffs allege that, at various times, they were paid less than the minimum wage amount for hours worked during particular weeks, and that they were not paid overtime for weeks in which they worked more than forty hours, all in violation of the Fair Labor

---

[1] Except as otherwise stated, "Plaintiffs" will refer both to the named Plaintiffs and all other similarly situated persons on whose behalf the instant lawsuit is brought.

Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01 *et seq.* Doc. #14, ¶¶ 71-97, PAGEID #99-102. Pursuant to Rule 12(b)(6), DPL has filed a Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion"). Doc. #16. For the reasons set forth below, its Motion is OVERRULED.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Plaintiffs and others were hired as technicians by Orion, with their employment start dates ranging from September, 2009, to July, 2015, and their end dates ranging from May, 2015, to August, 2016. Doc. #14, ¶¶ 19, 21-24, PAGEID #89, 90. During the time period relevant to this lawsuit, DPL contracted with Orion "to provide, among other things, meter reading functions, collections, meter exchanges, customer account charges, and other service duties for Defendant DPL's customers." *Id.*, ¶ 29, PAGEID #91. Orion was formed for the purpose of being DPL's service vendor, and "Orion's offices were located within Defendant DPL's Electric Services Department site." *Id.*, ¶ 35, PAGEID #92. Plaintiffs "worked exclusively for Defendant DPL," *id.*, ¶ 34, and "were instructed to go out into the field and perform a combination of . . . eight tasks for Defendant DPL[,] depending on Defendant DPL's need with respect to their customers." *Id.*, ¶ 41, PAGEID #93. These tasks, which Plaintiffs claim "required little skill or training," *id.*, ¶ 42, were as follows:

    1.    Post a notice of a bad check if a customer wrote a bad check;

---

[2] As DPL's Motion is brought under Rule 12(b)(6), the Court, for the purposes of the Motion, must treat Plaintiffs' well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

    2.     Transfer DPL account from one customer to another;

    3.     Close a customer's account;

    4.     Open a customer's account;

    5.     Investigate a customer's account;

    6.     Checking to see whether "electricity is being used on an account that was previously stopped";

    7.     Visiting DPL customers with delinquent accounts, and either collecting money from those customers or shutting off their electricity; and

    8.     Exchanging old meters for new ones.

Doc. #14, ¶¶ 45-52, PAGEID #93-94.

Plaintiffs allege that they "were required to report each morning at 8:00 a.m. to Defendant DPL's Electric Services Department to receive their task list. Technicians were required by Defendant DPL to complete all the tasks they received each day." Doc. #14, ¶ 55, PAGEID #95. Further, "DPL often added new tasks throughout the day," and "Technicians had to return to the field and work beyond their scheduled shifts to complete the additional task(s)." *Id.*, ¶ 56. DPL provided training and equipment to Plaintiffs, and provided feedback on how safely they were performing tasks. *Id.*, ¶¶ 58, 60-61, PAGEID #96.

Plaintiffs were required to work from 8:00 am until at least 4:30 p.m., five days per week, with no breaks. Doc. #14, ¶¶ 63, 67, PAGEID #97, 98. Additionally, Plaintiffs were required, from time to time, to be on call outside of those hours, "meaning that they would be called into the field after their scheduled shift to perform certain tasks." *Id.*, ¶ 66, PAGEID #98. Plaintiffs were paid on a per-task basis, at rates set by DPL. During some weeks, that pay structure resulted in Plaintiffs being paid less than the

3

hourly minimum wage. *Id.*, ¶¶ 67-68. Further, Plaintiffs allege, DPL and Orion "classified Technicians as employees exempt from overtime laws, as [DPL and Orion] never paid Technicians a premium payment for the hours they worked above forty in a work week," *id.*, ¶ 69, despite being aware that Plaintiffs "often worked more than forty hours per week." *Id.*, ¶ 70.

On June 20, 2016, Bechter, on behalf of himself and all others similarly situated, filed the instant lawsuit, alleging violations of FLSA and OMFWSA for failure to pay overtime. Doc. #1. On June 29, 2016, Bechter filed his Motion for Conditional Class Certification, Expedited Discovery and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Class Certification Motion"). Doc. #2. On August 19, 2016, DPL moved to dismiss the initial complaint. Doc. #11. On August 30, 2016, Bechter and the other named Plaintiffs, on behalf of themselves and all others similarly situated, filed their First Amended Complaint, alleging violations of FLSA and OMFWSA both for failure to pay overtime and for failure to pay minimum wage. Doc. #14. On September 13, 2016, DPL filed the current Motion. Doc. #16.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(6)

Rule 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

4

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).[3]

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct.

---

[3] This requirement renders DPL's Supplement to its Motion to Dismiss Plaintiffs' First Amended Complaint ("Supplement"), Doc. #23, immaterial to the Court's decision. The Supplement is comprised almost entirely of portions of Orion's answer, in which it denies several allegations in the First Amended Complaint. *Id.*, PAGEID #173-74 (citing Doc. #14, ¶¶ 20, 30, 34, 42, 55, 59, 63, PAGEID # 90, 92-93, 95-97; Doc. #20, ¶¶ 20, 30, 34, 42, 55, 59, 63, PAGEID #155-57, 159). At most, Orion's denials create a dispute as to the veracity of Plaintiffs' well-pleaded allegations, and at the pleading stage, the Court must resolve any such dispute in Plaintiffs' favor.

5

1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id*. at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### B. Employment Relations
#### 1. Relevant Constitutional and Statutory Provisions

With respect to overtime pay, the FLSA provides that, with few exceptions:

> [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a). The OMFWSA has an identical provision. Ohio Rev. Code § 4111.03(A). As to the minimum wage, the FLSA requires that "[e]very employer shall pay to each of his employees . . . not less than $7.25 an hour." 29 U.S.C. § 206(a)(1)(C). However, Ohio employers are required to pay their employees a higher minimum wage than that required by the FLSA. OHIO CONST. art. II, § 34(a). The FLSA defines an "employer" to "include[]any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), defines an "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).

6

### 2. Economic Realities Test

"The FLSA defines employment relationships very broadly." *Imar v. Contractors Mfg. Servs., Inc.*, No. 97-3543, 165 F.3d 27 (TABLE), 1998 WL 598778, at *2 (6th Cir. Aug. 24, 1998). Accordingly, the Sixth Circuit has adopted an "economic realities" test to determine, based on the totality of the circumstances, whether an employer-employee relationship exists. The factors that the Court analyzes include:

1. The permanency of the relationship between the parties;
2. The degree of skill required for the rendering of the services;
3. The worker's investment in equipment or materials for the task;
4. The worker's opportunity for profit or loss, depending upon his skill;
5. The degree of the alleged employer's right to control the manner in which the work is performed; and
6. Whether the service rendered is an integral part of the alleged employer's business.

*Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015) (citing *Donovan v. Brandel*, 736 F.2d 1114, 1117, n.5 (6th Cir. 1984)). "No one factor is determinative; a central question is the worker's economic dependence upon the business for which he is laboring." *Id.* (brackets, internal quotation marks and citation omitted).

### III. ANALYSIS

#### A. Economic Realities Test

##### 1. Permanency of Relationship

DPL claims that, because "DPL did not hire Plaintiffs, did not pay Plaintiffs, did not control any of the terms of Plaintiffs' employment and had no control over what tasks Plaintiffs performed each day," that "[b]ased on Plaintiffs' allegations, it is clear

7

that DPL simply had an agreement with . . . Orion . . . to perform services." Doc. #16, PAGEID #117 (citing Doc. #14, ¶¶ 29, 32-36, PAGEID #91, 92). As Orion contracted with Plaintiffs to perform the services, DPL argues, there was no permanent relationship between DPL and Plaintiffs. Doc. #18, PAGEID #147.

DPL's argument is unavailing. As Plaintiffs correctly note, there is no requirement that a formal contractual relationship exist for Plaintiffs to be considered DPL's employees. Doc. #17, PAGEID #127 (citing *Keller*, 781 F.3d at 808); *see also U.S. v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S.Ct. 295, 89 L.Ed. 301 (1945) (internal quotation marks and citation omitted) (FLSA definition of "employee" is "the broadest definition that has ever been included in any one act."). Moreover, Plaintiffs allege that Bechter was terminated at DPL's direction. Doc. #14, ¶ 20, PAGEID #90. Further, Plaintiffs were allegedly hired for an indefinite period of time and, during their employment, they worked solely for DPL. *Id.*, ¶¶ 34, 39, PAGEID #92, 93. Thus, the first factor weighs in favor of finding an employment relationship. *See Keeton v. Time Warner Cable, Inc.*, No. 2:09-cv-1085, 2011 WL 2618926, at *4 (S.D. Ohio Jul. 1, 2011) (Marbley, J.) (concluding in a factually similar situation that "a reasonable fact-finder could determine that Plaintiffs' employment was of a more permanent nature.").

### 2. Degree of Skill

If workers must possess a great degree of skill and autonomy to complete the relevant tasks, it is less likely that an employment relationship exists. *Brandel*, 736 F.2d at 1118. However, if the tasks require little "initiative, judgment, or foresight," and are "more like piecework," the Court is more likely to find that such a relationship exists. *Keller*, 781 F.3d at 809 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730,

67 S.Ct. 1473, 91 L.Ed. 1772 (1947)). DPL argues that "Plaintiffs were obligated to exercise considerable discretion" in completing the required tasks; specifically, "they were required to go to customers' homes, knock on their door[s], ask them for payment, determine [if] the amount the customer paid was sufficient to avoid shut-off, and make a discretionary, on-the-spot decision of whether to proceed with shut-off." Doc. #16, PAGEID #118 (citing Doc. #14, ¶ 51, PAGEID #94).

The mere fact that Plaintiffs had to exercise some degree of skill and discretion in performing their tasks is not, however, dispositive as to this factor. "[E]very worker has and uses relevant skills to perform his or her job. . . . It is also important to ask how the worker acquired his skill." *Keller*, 781 F.3d at 809. Plaintiffs allege that they had no prior experience performing any of the eight tasks prescribed by DPL, and that DPL provided all the necessary equipment and training. Doc. #14, ¶¶ 42, 44, 61, PAGEID #93, 96. Further, Plaintiffs allege that: they were paid a fixed, per-stop rate for completing tasks, *id.*, ¶ 68, PAGEID #98; they were assigned a set of tasks each day by DPL via Orion's office manager, Arick Mittler ("Mittler"); and DPL often added tasks to be performed during the day. *Id.*, ¶¶ 55-56, PAGEID #95. Plaintiffs do not allege that they had any discretion as to where, when or how they performed the tasks mandated by DPL. Nor do they allege that they could, for example, negotiate a higher rate with DPL based on their skill. The above allegations (and lack of allegations), taken as true, weigh in favor of finding an employment relationship. *See Doucette v. DIRECTV, Inc.*, No. 2:14-cv-2800-STA-tmp, 2015 WL 2373271, at *3 (W.D. Tenn. May 18, 2015) (finding that the second factor weighed in plaintiffs' favor because they were given no

9

meaningful discretion in the performance of their tasks, and their "profits presumably could not increase based on innovation or independence.").

### 3. Investment in Equipment or Materials

"The next factor we weigh is whether the worker has made a significant capital investment. . . . [C]ourts must compare the worker's investment in the equipment to perform his job with the company's total investment." *Keller*, 781 F.3d at 810 (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 344 (5th Cir. 2008)). DPL argues that "[b]ecause Plaintiffs only allege that DPL provided basic daily tools, like [in] *Keeton*, Plaintiffs fail to satisfy this factor." Doc. #16, PAGEID #118 (citing Doc. #14, ¶ 61, PAGEID #96; *Keeton*, 2011 WL 2618926, at *5 (occasionally "providing [plaintiffs] the tools for their daily installation duties" was not a capital investment sufficient to weigh in favor of finding that the defendant was an employer)).

Plaintiffs allege that they "were not required to purchase any of their own supplies." Doc. #14, ¶ 61, PAGEID #96. Thus, because "DPL provided Technicians among other things, meters, seals, meter locks, regular locks, meter readers, and iPads," *id.*, the relative investment made by DPL is greater than the investment made by Plaintiffs. Moreover, in *Keeton*, the entity that hired plaintiffs and with which defendant contracted provided the necessary tools to plaintiffs, and the defendant only occasionally lent tools to the plaintiffs on an overnight basis; "these tools, therefore, were not crucial to the [p]laintiffs' day-to-day duties." 2011 WL 2618926, at *4. However, Plaintiffs do not allege, and DPL does not claim, that Orion provided any necessary tools or equipment. As Plaintiffs could not have performed their day-to-day

10

tasks without the capital investment by DPL, and made no investment themselves, the third factor weighs in favor of finding that Plaintiffs were DPL employees.

### 4. Plaintiffs' Opportunity for Profit or Loss

The greater control that an employee has over his amount of profit or loss, the less likely the Court is to find that an employment relationship exists. *Brandel*, 736 F.3d at 1119. DPL argues that Orion, not DPL, controlled the tasks that Plaintiffs did on a given day, and thus, DPL could not have "controlled their profits and losses such that they were DPL's employee[s]." Doc. #16, PAGEID #119. DPL's argument ignores Plaintiffs' allegations that Mittler received the task lists directly from DPL, and that Plaintiffs were "required to report each morning . . . to DPL's Electric Services Department to receive their task list[s]." Doc. #14, ¶ 55, PAGEID #95. There is no allegation that Mittler or Plaintiffs had any ability to alter the task list, or that Orion or individual Plaintiffs had the ability to refuse to perform the additional tasks that DPL added during the workday. Thus, while Plaintiffs would certainly be paid more if they completed more tasks—all of which were assigned by DPL, *id*., ¶ 56—there is no indication from the First Amended Complaint that Plaintiffs had any independent ability to raise or lower their earning potential. Further, there is nothing in the First Amended Complaint that suggests Plaintiffs were "actually exposed to any risk of loss." *Brandel*, 736 F.3d at 1119. Accordingly, the fourth factor weighs in favor of finding that Plaintiffs were DPL employees.

### 5. Employees' Right to Control Their Work

The fifth factor is whether DPL exercised control over Plaintiffs' work. In *Keller*, the Court examined whether: (1) the plaintiff could refuse work assignments; (2) the defendant supervised or monitored the plaintiff's work performance; (3) the defendant was able to control the plaintiff's day-to-day work; and (4) the plaintiff could do work for other companies. 781 F.3d at 814. DPL argues that, because "Plaintiffs readily concede[] that an Orion employee assigned the daily task[s], . . . there can be no doubt that Orion controlled the work." Doc. #16, PAGEID #119 (citing Doc. #14, ¶ 30, PAGEID #92).

However, as discussed above, Mittler received the task list from DPL, and Plaintiffs do not allege that he or anyone else at Orion had the ability to alter or amend the task lists received. The First Amended Complaint permits the reasonable inference that they could not refuse additional assignments; indeed, Plaintiffs allege that "[f]requently, Technicians had to return to the field and work beyond their scheduled shifts to complete the additional task(s) mandated by Defendant DPL." Doc. #14, ¶ 56, PAGEID #95. As to monitoring and supervision, Plaintiffs allege that "DPL also used the iPads to track and monitor the Technicians' movement and progress throughout the day, relying on the iPad's [*sic*] GPS device." *Id.*, ¶ 61, PAGEID #96. Further, DPL employees would show up unannounced to a job site and evaluate whether Plaintiffs were performing tasks safely. *Id.*, ¶ 58. Such evaluation permits the reasonable inference that DPL was attempting to control at least some aspects of Plaintiffs' job performance. Finally, Plaintiffs allege that they worked exclusively for DPL, *id.*, ¶ 34, PAGEID #92, meaning, presumably, they could not work elsewhere. Accordingly, the fifth factor weighs in favor of finding that Plaintiffs were DPL employees.

### 6. Work Performed was Integral to DPL's Business

The final factor to be considered is whether the work performed by Plaintiffs was integral to DPL's business. "The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Keller*, 781 F.3d at 815. DPL argues that the account collection services provided by Orion and Plaintiffs were "not an integral part of [DPL] providing utility service," its primary business Doc. #16, PAGEID #119. DPL's argument is belied by the First Amended Complaint, in which Plaintiffs allege that they "put a boot on the meter, and put a red seal on the meter," Doc. #14, ¶ 47, PAGEID #94, when closing an account, and had to "go to the meter, cut the seal, conduct a nine-point inspection test, remove the boot, and put a green seal on the meter," *id.*, ¶ 48, when opening an account. Construed in the light most favorable to Plaintiffs, the tasks described appear to be integral to DPL's ability to start or stop providing electricity service to particular customers— the primary focus of DPL's business.

Further, Plaintiffs argue, without their notifying DPL customers of delinquencies, shutting off electricity, and demanding and collecting payment, "DPL would not receive payment from a large number of customers—which would significantly impact Defendant DPL's business." Doc. #17, PAGEID #137 (citing Doc. #14, ¶ 53, PAGEID #95). The Court agrees. It is illogical for DPL to suggest that, simply because it contracted out its collection services, getting paid is not integral to its business. Thus, the sixth factor weighs in favor of finding an employment relationship.

### 7. Conclusion

To varying degrees, all six of the "economic realities test" factors weigh in favor of finding that Plaintiffs are DPL employees. At the very least, Plaintiffs have alleged more than enough at the pleading stage to permit the plausible inferences that they were economically dependent upon DPL, and thus, that an employment relationship exists. Accordingly, to the extent that DPL's Motion is based on its argument that it is not Plaintiffs' employer, it is overruled.[4]

### B. Overtime Pay

DPL argues that "Plaintiffs have alleged nothing more than threadbare allegations that they 'were forced to work more than 40 hours per week without overtime compensation for the last 3 years,'" and that Plaintiffs failed to "assert which weeks, for which Plaintiffs worked, the excess number of hours or any specific details supporting their conclusory allegations." Doc. #16, PAGEID #122 (quoting Doc. #14, ¶ 83, PAGEID #100). DPL notes that, while the Sixth Circuit has not addressed the issue, other Circuits have held that when plaintiffs merely allege that their employers did not pay them overtime, with no allegations permitting a plausible inference that they worked more than forty hours in certain weeks, those allegations are insufficient to survive a

---

[4] Although the parties briefed the issue of whether DPL could be held liable as a joint employer, Doc. #16, PAGEID #120-21; Doc. #17, PAGEID #138-40; Doc. #18, PAGEID #149, the Court's conclusion that, under the "economic realities" test, Plaintiffs were DPL employees, renders ruling on that issue unnecessary. *See Keeton*, 2011 WL 2618926, at *3 (emphasis added) ("[E]ither the . . . 'economic realities' test or the . . . 'joint employment' test could provide a grounds for determining that an entity is an employer under FLSA and responsible for paying overtime wages."). The issue, however, may be considered in connection with a motion for summary judgment, if relevant and appropriate.

14

motion to dismiss. *Id.*, PAGEID #121-22.[5] As Plaintiffs have done nothing more than rehash FLSA's statutory language, DPL argues, its federal and state overtime claims should be dismissed. *Id.*, PAGEID #122.

Plaintiffs, in their memorandum *contra*, note that the First Amended Complaint contains allegations that they worked more than forty hours during normal workweeks. Further, they allege that they often had to work beyond their scheduled shifts, either because they needed more time to complete the tasks assigned by DPL, or because they were required to be on call after their shifts. Doc. #17, PAGEID #140-41 (citing Doc. #14, ¶¶ 65-67, PAGEID #97-98). They note that District Courts within the Sixth Circuit have consistently rejected the idea that plaintiffs must plead a FLSA claim with specificity; rather, those courts have only required plaintiffs to plausibly allege: an employment relationship; that they regularly worked more than forty hours per week; and that they failed to receive overtime pay for those weeks. *Id.*, PAGEID #141-42.[6] They argue that because the First Amended Complaint met that threshold, DPL's Motion should be overruled. *Id.* at 143 (citing *Comer v. DIRECTV, LLC*, No. 2:14-cv-1986, 2016 WL 853027, at * 9-10 (S.D. Ohio Mar. 4, 2016) (Graham, J.); *Mabry v. DIRECTV, LLC*, No. 3:14cv-698-JHM, 2015 WL 5554023, at *4 (W.D. Ky. Sept. 21, 2015)).

---

[5] Citing *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, 644-645 (9th Cir. 2014); *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241-242 (3d Cir. 2014); *Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 89 (2d Cir. 2013); *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *Lundy v. Catholic Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 114-15 (2d Cir. 2013); *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012).

[6] Citing *Comer v. DIRECTV, LLC*, No. 2:14-cv-1986, 2016 WL 853027, at * 9-10 (S.D. Ohio Mar. 4, 2016) (Graham, J.); *Dowd v. DIRECTV, LLC*, No. 14-cv-14018, 2016 WL 28866, at * 7 (E.D. Mich. Jan. 4, 2016); *Mabry v. DIRECTV, LLC*, No. 3:14cv-698-JHM, 2015 WL 5554023, at *4 (W.D. Ky. Sept. 21, 2015); *Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-cv-1155-JDB-egb, 2011 WL 1256625, at *6-7 (W.D. Tenn. Mar. 31, 2011); *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 1811550, at *2 (E.D. Ky. June 25, 2009).

We need not determine whether a heightened pleading standard applies in this case, because Plaintiffs, in the First Amended Complaint, go well beyond the allegations in the cases cited by DPL. They allege that they typically worked 42.50 hours during a typical week, and that, "[f]rom approximately late-October to mid-April during the last three years," they were not even paid minimum wage, much less overtime. *Id.*, ¶¶ 63, 67, PAGEID #97, 98. Further, Plaintiffs allege that DPL and Orion misclassified them as exempt employees to avoid paying overtime. *Id.*, ¶ 69, PAGEID #97. The court in *Comer* analyzed similarly-detailed allegations and concluded that "[e]ven if the Sixth Circuit were to adopt a stringent pleading standard, these claims would likely not be dismissed." 2016 WL 853027, at *9. This Court agrees, and concludes that Plaintiffs have set forth plausible claims for unpaid overtime. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570. Accordingly, DPL's Motion is overruled as to the above argument as well.[7]

## IV. CONCLUSION

For the foregoing reasons, DPL's Motion to Dismiss Plaintiffs' First Amended Complaint, Doc. #16, is OVERRULED. DPL, Orion and Defendant Evan Hagberg must file any memoranda in opposition to Plaintiffs' Class Certification Motion, Doc. #2, within twenty-one (21) days of this Entry.

---

[7] While not necessary to resolve the Motion, the Court wishes to emphasize its agreement with the other District Courts within the Sixth Circuit, which, as Plaintiffs noted, have rejected repeated attempts to impose a heightened pleading standard upon FLSA plaintiffs.

Date: November 10, 2016

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE